THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:98-CV-934-BO(3)

FILED
OCT 25 1999
David W. Daniel, Clerk
US District Court, EDNC
By ______ Dep. Clerk

| | | |
|---|---|---|
| CAROUSEL CAPITAL PARTNERS, L.P.,<br><br>Plaintiff,<br><br>vs.<br><br>R. HAROLD CHAPPELL, LOYALHANNA VENTURE FUND, L.P., LOYALHANNA COMMONWEALTH FUND, L.P., INTERSOUTH PARTNERS, L.P., INTERSOUTH PARTNERS II, L.P., THE SOUTHERN VENTURE FUND LIMITED PARTNERSHIP, DENNIS J. DOUGHERTY, WILLIAM F. EARTHMAN III, JAMES H. KNOWLES, JR. and ERNST & YOUNG, L.L.P.,<br><br>Defendants. | ) | **ANSWER AND COUNTERCLAIMS** |

Defendants Loyalhanna Venture Fund, L.P. ("LVF"), Loyalhanna Commonwealth Fund, L.P. ("LCF"), Intersouth Partners, L.P. ("IP"), Intersouth Partners II, L.P. ("IP II"), The Southern Venture Fund Limited Partnership ("Southern"), Dennis J. Dougherty ("Dougherty"), William F. Earthman III ("Earthman"), James H. Knowles, Jr. ("Knowles") (collectively, the "Defendants") respond to the Complaint of Plaintiff Carousel Capital Partners, L.P. ("Plaintiff" or "Carousel") as follows:

**PARTIES, JURISDICTION AND VENUE**

1. The allegations of Paragraph 1 are admitted upon information and belief.

2. The allegations of Paragraph 2 are admitted upon information and belief.

3. The allegations of Paragraph 3 are admitted.

Doc No: 307976.1v2



28

4. The allegations of Paragraph 4 are admitted.

5. The allegations of Paragraph 5 are admitted.

6. The allegations of Paragraph 6 are admitted.

7. The allegations of Paragraph 7 are admitted.

8. As to the allegations of Paragraph 8, it is admitted that Dougherty is a citizen and resident of North Carolina, that he is a general partner in Intersouth and Intersouth II and that he is an officer of the management company charged with making investment decisions for various funds including Intersouth and Intersouth II. Except as admitted, the remaining allegations of Paragraph 8 are denied.

9. As to the allegations of Paragraph 9, it is admitted that Earthman is a citizen and resident of North Carolina, that he is a general partner in Southern and that he is an officer of the management company charged with making investment decisions for various funds including Southern. Except as herein admitted, the remaining allegations of Paragraph 9 are denied.

10. As to the allegations of Paragraph 10, it is admitted that Knowles is a citizen and resident of North Carolina, that he is a general partner in LVF and LCF and that he is an officer of the management company charged with making investment decisions for various funds including LVF and LCF. Except as admitted, the remaining allegations of Paragraph 10 are denied.

11. The allegations of Paragraph 11 are admitted upon information and belief.

12. The allegations of Paragraph 12 are legal conclusions to which no response is required. To the extent that a response is required, however, Defendants deny the allegations in Paragraph 12 of the Complaint.

13. The allegations of Paragraph 13 are legal conclusions to which no response is required. To the extent that a response is required, however, Defendants deny the allegations in Paragraph 13 of the Complaint.

14. The allegations of Paragraph 14 are admitted.

15. Defendants admit that prior to the closing of the transaction documented by the Recapitalization Agreement (the "Recapitalization Transaction"), the Investor Defendants (hereafter used to refer to LVF, LCF, IP, IP II and Southern collectively) were holders of common stock, warrants, options and promissory notes of IllumElex Corporation (hereafter "IllumElex" or the "Company"), and that the Investor Defendants sold their respective ownership interests in IllumElex to IllumElex in the amounts and for the consideration set forth in the Recapitalization Agreement, which is in writing and speaks for itself as to its terms. It is admitted upon information and belief that Chappell sold a portion of his ownership interest in IllumElex to IllumElex in the amounts and for the consideration set forth in the Recapitalization Agreement, which is in writing and speaks for itself as to its terms. To the extent that the allegations of Paragraph 15 are inconsistent with the terms of the Recapitalization Agreement, they are denied. Except as admitted, the allegations of Paragraph 15 are denied.

16. Defendants admit that pursuant to the Recapitalization Agreement, Plaintiff purchased shares of IllumElex Class A common stock in the amounts and for the purpose set forth in the Recapitalization Agreement, which is in writing and speaks for itself as to its terms. To the extent that the allegations of Paragraph 16 are inconsistent with the terms of the Recapitalization Agreement, they are denied. Except as admitted, the allegations of Paragraph 16 are denied.

17. The allegations of Paragraph 17 are admitted upon information and belief.

18. The allegations of Paragraph 18 are admitted upon information and belief.

19. As to the allegations in Paragraph 19 of the Complaint, Defendants state that the Recapitalization Agreement is in writing and speaks for itself as to its terms. To the extent that the allegations contained in Paragraph 19 are inconsistent with the Recapitalization Agreement, they are denied. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 19, which allegations are therefore denied. Except as admitted, the remaining allegations of Paragraph 19 are denied.

20. As to the allegations in Paragraph 20 of the Complaint, Defendants state that the Recapitalization Agreement is in writing and speaks for itself as to its terms. To the extent that the allegations of Paragraph 20 are inconsistent with the terms of the Recapitalization Agreement, they are denied. Except as admitted, the remaining allegations of Paragraph 20 are denied.

21. As to the allegations in Paragraph 21 of the Complaint, Defendants state that the Recapitalization Agreement is in writing and speaks for itself as to its terms. To the extent that the allegations of Paragraph 21 and footnote 1 are inconsistent with the terms of the Recapitalization Agreement, they are denied. Except as admitted, the remaining allegations of Paragraph 21 and footnote 1 are denied and it is further specifically denied that these Defendants made the representations set forth in Paragraph 21.

22. As to the allegations in Paragraph 22 of the Complaint, Defendants state that the Recapitalization Agreement is in writing and speaks for itself as to its terms. To the extent that the allegations of Paragraph 22 are inconsistent with the terms of the Recapitalization Agreement, they are denied. Except as admitted, the remaining allegations of Paragraph 22 are

denied and it is further specifically denied that these Defendants made the representations set forth in Paragraph 22.

23. As to the allegations in Paragraph 23 of the Complaint, Defendants state that the Recapitalization Agreement is in writing and speaks for itself as to its terms. To the extent that the allegations of Paragraph 23 are inconsistent with the terms of the Recapitalization Agreement, they are denied. Except as admitted, the remaining allegations of Paragraph 23 are denied and it is further specifically denied that these Defendants made the representations set forth in Paragraph 23.

24. As to the allegations in Paragraph 24 of the Complaint, Defendants state that the Recapitalization Agreement is in writing and speaks for itself as to its terms. To the extent that the allegations of Paragraph 24 are inconsistent with the terms of the Recapitalization Agreement, they are denied. Except as admitted, the remaining allegations of Paragraph 24 and footnote 2 are denied and it is further specifically denied that these Defendants made the representations set forth in Paragraph 24.

25. The allegations of Paragraph 25 and each of its sub-paragraphs are denied.

26. The allegations of Paragraph 26 are denied.

27. As to the allegations in Paragraph 27 of the Complaint, Defendants state that the Recapitalization Agreement is in writing and speaks for itself as to its terms. To the extent that the allegations of Paragraph 27 are inconsistent with the terms of the Recapitalization Agreement, they are denied. Except as admitted, the remaining allegations of Paragraph 27 are denied.

28. As to the allegations in Paragraph 28 of the Complaint, Defendants state that the Recapitalization Agreement is in writing and speaks for itself as to its terms. To the extent that

the allegations of Paragraph 28 are inconsistent with the terms of the Recapitalization Agreement, they are denied. Except as admitted, the remaining allegations of Paragraph 28 are denied and it is further specifically denied that these Defendants made the representations set forth in Paragraph 28.

29. As to the allegations in Paragraph 29 of the Complaint, Defendants state that the Recapitalization Agreement is in writing and speaks for itself as to its terms. To the extent that the allegations of Paragraph 29 are inconsistent with the terms of the Recapitalization Agreement, they are denied. Except as admitted, the remaining allegations of Paragraph 29 are denied and it is further specifically denied that these Defendants made the representations set forth in Paragraph 29.

30. As to the allegations in Paragraph 30 of the Complaint, Defendants state that the Recapitalization Agreement is in writing and speaks for itself as to its terms. To the extent that the allegations of Paragraph 30 are inconsistent with the terms of the Recapitalization Agreement, they are denied. Except as admitted, the remaining allegations of Paragraph 30 are denied and it is further specifically denied that these Defendants made the representations set forth in Paragraph 30.

31. It is admitted upon information and belief that from time to time IllumElex sold used or reconditioned materials as agreed with and allowed by its customers. Except as admitted, the remaining allegations of Paragraph 31 are denied.

32. The allegations of Paragraph 32 are denied.

33. The allegations of Paragraph 33 are denied and it is specifically denied that these Defendants made any of the representations set forth in Paragraphs 21 through 24 or 28 through 30.

34. Defendants Dougherty, Earthman and Knowles (hereafter referred to collectively as the "Outside Directors") admit that each signed the Recapitalization Agreement in their representative capacities on behalf of the Investor Defendants or partners of the Investor Defendants. It is specifically denied that any of these Defendants signed the Recapitalization Agreement in their individual capacities. It is admitted upon information and belief that Chappell signed the Recapitalization Agreement. Except as admitted, the remaining allegations of Paragraph 34 are denied.

35. Defendants admit upon information and belief that prior to the closing of the Recapitalization Transaction, Chappell was a shareholder of IllumElex, its President, Chief Executive Officer and Chairman of its Board of Directors. Defendants are without knowledge or information sufficient to form a belief as to the remaining allegations of Paragraph 35, and those allegations are therefore denied. Except as admitted, the remaining allegations of Paragraph 35 are denied.

36. Defendants admit that prior to the closing of the Recapitalization Agreement, the Investor Defendants were shareholders of IllumElex and that the Investor Defendants were represented on its Board of Directors by the Outside Directors. The IllumElex Shareholder Agreement and Investor Rights Agreement are in writing and speak for themselves as to their terms but Defendants specifically deny that those agreements or membership by any one of the Outside Directors on the IllumElex Board of Directors conferred on any of the Defendants, individually or collectively, control over the operation of the Company. Except as admitted, the remaining allegations of Paragraph 36 are denied.

37. As to the allegations of Paragraph 37, Defendants state that the IllumElex Shareholder Agreement is in writing and speaks for itself as to its terms. To the extent that the

allegations of Paragraph 37 are inconsistent with the terms of the IllumElex Shareholder Agreement, they are denied and it is specifically denied that the Investor Defendants had a right acting alone or together to elect a fourth director to the IllumElex Board. Except as admitted, the remaining allegations of Paragraph 37 are denied.

38. Defendants admit that Knowles was a director of IllumElex. As to the allegations of Paragraph 38 of the Complaint, Defendants state that the IllumElex Shareholder Agreement is in writing and speaks for itself as to its terms. To the extent that the allegations of Paragraph 38 are inconsistent with the terms of the IllumElex Shareholder Agreement, they are denied. Except as admitted, the remaining allegations of Paragraph 38 are denied.

39. Defendants admit that Dougherty was a director of IllumElex. As to the remaining allegations of Paragraph 39 of the Complaint, Defendants state that the IllumElex Shareholder Agreement is in writing and speaks for itself as to its terms. To the extent that the allegations of Paragraph 39 are inconsistent with the terms of the IllumElex Shareholder Agreement, they are denied. Except as admitted, the remaining allegations of Paragraph 39 are denied.

40. Defendants admit that Earthman was a director of IllumElex. As to the remaining allegations of Paragraph 40 of the Complaint, Defendants state that the IllumElex Shareholder Agreement is in writing and speaks for itself as to its terms. To the extent that the allegations of Paragraph 40 are inconsistent with the terms of the IllumElex Shareholder Agreement, they are denied. Except as admitted, the remaining allegations of Paragraph 40 are denied.

41. As to the allegations of Paragraph 41 of the Complaint, Defendants state that the IllumElex Investor Rights Agreement is in writing and speaks for itself as to its terms. To the extent that the allegations of Paragraph 41 are inconsistent with the terms of the IllumElex

Investor Rights Agreement, they are denied. Except as admitted, the remaining allegations of Paragraph 41 are denied.

42. As to the allegations of Paragraph 42 of the Complaint, Defendants state that the IllumElex Investor Rights Agreement is in writing and speaks for itself as to its terms. To the extent that the allegations of Paragraph 42 are inconsistent with the terms of the IllumElex Investor Rights Agreement, they are denied. Except as admitted, the remaining allegations of Paragraph 42 are denied.

43. Defendants admit that Chappell and the Outside Directors served as directors and that from time to time one or more of them served on various committees of the Board of Directors, including the Audit and Executive Committees. Except as herein admitted the remaining allegations of Paragraph 43 are denied.

44. As to the allegations of Paragraph 44 of the Complaint, Defendants admit that they properly discharged their duties as directors of IllumElex consistent with the Company's charter and by-laws and the laws of North Carolina. It is specifically denied that the Outside Directors or the Investor Defendants ever undertook an active or "hands on" role in the operations or management of IllumElex. Except as herein admitted, the remaining allegations of Paragraph 44 are denied.

45. The allegations of Paragraph 45 are denied. The Defendants specifically deny that the law of North Carolina or the charter and bylaws of IllumElex imposed on them as directors the duty or obligation to supervise or review IllumElex officers and employees as alleged, or that they ever, in fact, exercised such authority, either individually or in any representative capacity.

46. The allegations of Paragraph 46 are admitted.

47. It is admitted that prior to the closing of the Recapitalization Transaction, Carousel was furnished with IllumElex's financial statements and E&Y's audit report. Defendants are without knowledge and information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 47 and those allegations are therefore denied.

48. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 48 and those allegations are therefore denied.

49. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 49 and those allegations are therefore denied.

50. As to the allegations of Paragraph 50, Defendants state that the draft management letter is in writing and speaks for itself as to its terms. To the extent that the allegations of Paragraph 50 are inconsistent with the terms of the draft management letter, they are denied. Defendants are without knowledge or information sufficient to form a belief as to the remaining allegations of Paragraph 50 and those allegations are therefore denied.

51. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 51 and those allegations are therefore denied.

52. The allegations of Paragraph 52 are denied.

## CLAIMS FOR RELIEF

### First Claim for Relief: Securities Fraud Against Defendant Chappell

53. Defendants incorporate by reference their responses to Paragraphs 1-52.

54-61. The allegations of Paragraphs 54-61 of the Complaint are not directed to these Defendants and accordingly, require no response. To the extent that a response is required, however, Defendants lack knowledge or information sufficient to form a belief as to the truth of those allegations and those allegations are therefore denied.

## Second Claim for Relief: Control Person Liability Against Chappell

62. Defendants incorporate by reference their responses to Paragraphs 1-62.

63-67. The allegations of Paragraphs 63-67 of the Complaint are not directed to these Defendants and accordingly, require no response. To the extent that a response is required, however, Defendants lack knowledge or information sufficient to form a belief as to the truth of those allegations and those allegations are therefore denied, except that Defendants specifically deny those allegations of Paragraph 63 which imply that IllumElex acted through its directors.

## Third Claim For Relief: Control Person Liability of the Venture Shareholders, Dougherty, Earthman and Knowles

68. Defendants incorporate by reference their responses to Paragraphs 1-67.

69. The allegations of Paragraph 69 are denied and it is specifically denied that the Investor Defendants or the Outside Directors individually possessed the power to direct or cause the direction of the management and policies of IllumElex.

70. The allegations of Paragraph 70 are denied.

71. The allegations of Paragraph 71 are denied.

72. The allegations of Paragraph 72 are denied.

73. The allegations of Paragraph 73 are denied.

## Fourth Claim For Relief: Contractual Indemnification Personal Liability of the Venture Shareholders, Dougherty, Earthman and Knowles

74. Defendants incorporate by reference their responses to Paragraphs 1-73.

75. As to the allegations of Paragraph 75, Defendants state that the Recapitalization Agreement is in writing and speaks for itself as to its terms. To the extent that the allegations of Paragraph 75 are inconsistent with the terms of the Recapitalization Agreement, they are denied. Except as admitted, the remaining allegations of Paragraph 75 are denied.

76. As to the allegations of Paragraph 76, Defendants state that the Recapitalization Agreement is in writing and speaks for itself as to its terms. To the extent that the allegations of Paragraph 76 are inconsistent with the terms of the Recapitalization Agreement, they are denied. Except as admitted, the allegations of Paragraph 76 are denied.

77. The allegations of Paragraph 77 are denied.

78. The allegations of Paragraph 78 are denied.

79. The allegations of Paragraph 79 are denied.

**Fifth Claim For Relief: Negligence Against E&Y**

80. Defendants incorporate by reference their responses to Paragraphs 1-79.

81-98. The allegations of Paragraphs 81-98 of the Complaint are not directed to these Defendants and accordingly require no response. To the extent that a response is required, however, Defendants admit that E&Y performed professional accounting/auditing services for IllumElex in years prior to the Recapitalization Transaction and specifically deny that Carousel suffered any damage or loss as a result of the Recapitalization Transaction. As to the remaining allegations of Paragraphs 81-98, Defendants are without knowledge or information sufficient to form a belief as to the truth of those allegations and those allegations are therefore denied.

**FIRST AFFIRMATIVE DEFENSE**

Carousel's Complaint fails to state a claim upon which relief can be granted and should therefore be dismissed in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**SECOND AFFIRMATIVE DEFENSE**

1. At all times during their involvement with IllumElex, the Outside Directors served as independent, outside members of the Board of Directors. Each served as a

representative of their respective venture funds, but no one Outside Director had more than one vote on any issue before the Board. None of the Outside Directors was required by law, contract or any implied agreement to act in concert with any other Outside Director, and each Outside Director at all times acted strictly in the best interests of the Company without regard to the wishes of the other Outside Directors or Investor Defendants. The Outside Directors from time to time disagreed with each other and other directors and expressed their differing view points in IllumElex Board meetings.

2. None of the Investor Defendants, by virtue of their respective percentage ownership of IllumElex stock, had the power, acting alone, to control any decision of the Board of IllumElex. None of the Outside Directors owned shares of IllumElex personally, and at no time did any of the Outside Directors serve as an employee or officer of the Company.

3. While the Outside Directors continued to serve as directors of IllumElex until the closing of the Recapitalization Transaction, for all practical purposes, after November 1996, Carousel took control of IllumElex by virtue of the execution of a letter of intent which contained an exclusivity provision preventing IllumElex or Defendants from negotiating with any other potential buyers. In fact, during Carousel's extensive due diligence period, Carousel refused to have contact with the Defendants, limited the Company's contact with the Defendants, and exerted influence over Chappell by virtue of its offer to him of a lucrative employment agreement, to be effective after Carousel's acquisition of IllumElex.

4. Accordingly, none of these Defendants were ever "controlling persons" of IllumElex within the meaning of § 20(a) of the 1934 Act, 15 U.S.C. § 78(a), which facts are pled in defense to and in bar of the Complaint.

## THIRD AFFIRMATIVE DEFENSE

1. Defendants incorporate by reference Paragraphs 1-4 of their Second Affirmative Defense.

2. As outside directors, the Outside Directors were required by law to act in good faith, with the care and loyalty of an ordinary prudent person in a like position and in a manner each reasonably believed to be in the best interests of IllumElex.

3. In the discharge of their duties, the Outside Directors had a right to rely on information, opinions, reports and statements, including financial statements prepared and presented to them by officers and employees of the Company, other committees of the Board, legal counsel, public accountants and other professionals retained by the Company.

4. At all times the Outside Directors acted in good faith in the discharge of their duties as directors through the closing of the sale of the Investor Defendants' respective ownership interests and the Outside Directors' resignations from the IllumElex Board.

5. Defendants plead their good faith in defense of and complete bar to the claims of Carousel against them pursuant to 15 U.S.C. § 78t.

## FOURTH AFFIRMATIVE DEFENSE

1. At all times during their involvement with IllumElex, the Outside Directors in their individual capacities served as independent, outside members of the Board of Directors.

2. In 1991, IllumElex executed an Amended and Restated Charter, which amended and restated IllumElex's Articles of Incorporation in their entirety. Article 8 provides:

> A director of the corporation shall have no personal liability arising out of an action, whether by or in the right of the corporation or otherwise, for monetary damages for breach of duty as a director, to the fullest extent allowed by North Carolina law as it now exists or may hereafter be amended.

3. As a complete bar to recovery of monetary damages against them, Defendants plead the exculpation of directors' personal liability provided for in IllumElex's Articles of Incorporation.

## FIFTH AFFIRMATIVE DEFENSE

Carousel's causes of action are barred in whole or in part by the applicable statute of limitations.

## SIXTH AFFIRMATIVE DEFENSE

1. Carousel is a Charlotte, North Carolina based "leveraged buy-out" fund, whose principals include Erskine Bowles, Nelson Schwab and Reid Leggett, all of whom are experienced in the business of buying and taking control of companies such as IllumElex. Upon information and belief, IllumElex was the first company acquired by Carousel after its formation, and the principals were particularly interested in ensuring that the acquisition of IllumElex was made on terms highly favorable to Carousel's investors.

2. Carousel began its pursuit of IllumElex as early as September, 1996. For eight (8) months it conducted extensive due diligence on IllumElex using its own accounting firm (Deloitte & Touche), attorneys (Kennedy Covington Lobdell & Hickman), lenders (NationsBank) and Carousel's principals and senior professional staff, including Joe Pitt, Carousel's Chief Financial Officer. In addition, Carousel had access to and called upon the Company's investment bankers, Interstate/Johnson Lane, who were retained specifically for the purpose of assisting with the sale of the Company.

3. During the course of negotiation and due diligence, Carousel had complete and unfettered access to the books and records of IllumElex, including full access to IllumElex's

officers and employees. Moreover, Carousel had full access to the operations of IllumElex including direct, one-on-one contact with major IllumElex customers.

4. During the course of the due diligence and negotiation, Carousel on a number of occasions before the closing of the Recapitalization Agreement demanded and received price reductions from the sellers based on their review and evaluation of the Company, including specifically their evaluation of the quality and quantity of IllumElex's accounts receivable, accounts payable, inventory and work-in-process.

5. Moreover, as part of the Recapitalization Agreement, Carousel insisted upon and received the right to conduct a "post-closing adjustment" to the purchase price based on its further examination of IllumElex's assets and liabilities determined after it closed the Recapitalization Transaction on April 14, 1997.

6. After the closing, and after having been in complete custody and control of IllumElex for over four (4) months, Carousel in fact exercised its right to a "post-closing adjustment" and further reduced the consideration it paid for IllumElex. Upon information and belief, Carousel took further price reductions based on its exhaustive review of the Company, including specifically its evaluation of IllumElex's inventory, receivables, work-in-process, and accounts payable.

7. At the time of the "post-closing adjustment" (if not long before), Carousel knew or in the exercise of reasonable diligence should have known all facts which it now alleges gives rise to its claims against these Defendants, including specifically those matters set forth in the E&Y draft management letter. Despite such knowledge, Carousel reaffirmed the Recapitalization Agreement through the "post closing adjustment" and received further price concessions from the sellers.

8. Carousel's acceptance of further price reductions via the "post-closing adjustment" at a time when it knew or should have known of all its alleged but denied claims operates as an accord and satisfaction and release of all its claims as set forth in its Complaint, and Defendants assert the doctrine of accord and satisfaction and release in defense of and complete bar to all claims asserted against them.

## SEVENTH AFFIRMATIVE DEFENSE

1. Defendants incorporate by reference paragraphs 1 through 8 of their Sixth Affirmative Defense.

2. Carousel's causes of action are barred in whole or in part by laches, waiver, and/or estoppel.

## EIGHTH AFFIRMATIVE DEFENSE

1. Defendants incorporate by reference Paragraphs 1 through 8 of their Sixth Affirmative Defense.

2. Under §8.1(c) of the Recapitalization Agreement Carousel is obligated to give prompt written notice of any "Indemnity Claim" to these Defendants setting forth the relevant facts and circumstances of the "Indemnity Claim." Such notice is a condition precedent to the assertion of an "Indemnity Claim." Plaintiff knew or should have known of the facts which it now alleges give rise to its claims at least as early as July 1997, if not earlier, yet it failed to give notice of its alleged but denied claims until June 1998 and Defendants plead Carousel's failure to meet conditions precedent in defense of and bar to the Complaint.

## NINTH AFFIRMATIVE DEFENSE

Carousel has suffered no injury or damage as a result of the alleged wrongdoing of the Defendants, which wrongdoing is denied. On information and belief, Carousel owned and ran

IllumElex for only 20 months and sold all its ownership interest in IllumElex to SLI Lighting Solutions, Inc. ("SLI") in November 1998. As a result of the sale of IllumElex to SLI, Carousel has realized significant return on its investment. Defendants are informed and believe that in the 20 months Carousel owned IllumElex it was able to more than double its original equity investment. Defendants plead the lack of injury and damage to Carousel in defense of and bar to the Complaint.

## TENTH AFFIRMATIVE DEFENSE

The Outside Directors were outside directors of IllumElex and the Investor Defendants were passive investors. Under the Recapitalization Agreement, all representations and warranties about which Plaintiff complains were made solely by IllumElex and specifically not by these Defendants. In fact, the Outside Directors as individuals made no representations at all to IllumElex or Carousel. To the extent that any such representations and warranties made in the Recapitalization Agreement were false, which is denied, these Defendants had no role in making those representations and warranties, nor were they, or could they have been aware of the alleged but denied false or misleading nature of such representations and warranties. Defendants plead their lack of culpable participation in the alleged but denied fraud in defense of and bar to Plaintiff's claims.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff failed to mitigate the damages it allegedly suffered. Specifically, if Carousel suffered any losses associated with the purchase of IllumElex, which is denied, it suffered such losses solely as a result of its own gross mismanagement of the Company after it closed the Recapitalization Transaction in April 1997. Defendants are informed and believe that after the Recapitalization Transaction closed, Carousel abandoned or altered existing industry accepted

and time proven practices at the Company, fired key experienced and competent Company employees, and without any reasonable best efforts to collect, simply wrote down or wrote off valid and collectible receivables, and similarly wrote down or wrote off valuable work-in-process and inventory. Defendants plead Carousel's failure to mitigate its alleged but denied damages in defense of and bar to the Complaint.

## TWELFTH AFFIRMATIVE DEFENSE

Pursuant to 15 U.S.C. § 78u-4(g), to the extent that Defendants are liable to Plaintiff, which is denied, Defendants allege that persons or entities other than Defendants caused or contributed to any loss incurred by Plaintiff, which loss is denied, and request that the Court apportion liability among the other persons and entities who may have caused such loss.

## INVESTOR DEFENDANTS' COUNTERCLAIMS AGAINST PLAINTIFF

As Counterclaims against Plaintiff, LVF, LCF, IP, IP II and Southern allege:

## PARTIES

1. LVF is a limited partnership organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business in Pittsburgh, Pennsylvania.

2. LCF is a limited partnership organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business in Pittsburgh, Pennsylvania.

3. IP is a limited partnership organized and existing under the laws of the State of North Carolina, with its principal place of business in Durham, North Carolina.

4. IP II is a limited partnership organized and existing under the laws of the State of North Carolina, with its principal place of business in Durham, North Carolina.

5. Southern is a limited partnership organized and existing under the laws of the State of Tennessee, with its principal place of business in Nashville, Tennessee.

6. Upon information and belief, Counterclaim Defendant Carousel is a venture capital limited partnership organized and existing under the laws of the State of Delaware, but having its principal place of business in Charlotte, Mecklenburg County, North Carolina. Carousel is a "leveraged buy-out" fund which generally takes control of the ownership, including the board of directors, of its investments such as IllumElex.

## FACTS APPLICABLE TO ALL CLAIMS

7. The allegations of Paragraphs 1 through 6 of the Investor Defendants' Counterclaims are realleged and incorporated by reference.

8. On April 4, 1997, Carousel bought controlling interest in IllumElex. As part of its purchase, Carousel acquired all of the stock of IllumElex previously held by each of the Investor Defendants.

9. On April 4, 1997, as part of the acquisition by Carousel, IllumElex executed and delivered to LVF a promissory note in the original principal amount of Five Hundred Seventeen Thousand Eight and 04/100 Dollars ($517,008.04) (the "First Note"). A true and accurate copy of the First Note is attached as **Exhibit A** and incorporated by reference.

10. On April 4, 1997, as part of the acquisition by Carousel, IllumElex executed and delivered to LCF a promissory note in the original principal amount of Three Hundred Ten Thousand One Hundred Seventy-Seven and 83/100 Dollars ($310,177.83) (the "Second Note"). A true and accurate copy of the Second Note is attached as **Exhibit B** and incorporated by reference.

11. On April 4, 1997, as part of the acquisition by Carousel, IllumElex executed and delivered to IP a promissory note in the original principal amount of One Hundred Eighty-Nine Thousand Four Hundred Ninety-Seven and 02/100 Dollars ($189,497.02) (the "Third Note"). A true and accurate copy of the Third Note is attached as **Exhibit C** and incorporated by reference.

12. On April 4, 1997, as part of the acquisition by Carousel, IllumElex executed and delivered to IP II a promissory note in the original principal amount of One Hundred Thirty One Thousand Two Hundred Ninety-Nine and 42/100 Dollars ($131,299.42) (the "Fourth Note"). A true and accurate copy of the Fourth Note is attached as **Exhibit D** and incorporated by reference.

13. On April 4, 1997, as part of the acquisition by Carousel, IllumElex executed and delivered to Southern a promissory note in the original principal amount of One Hundred Eighty-Nine Thousand Four Hundred Seventy-One and 43/100 Dollars ($189,471.43) (the "Fifth Note"). A true and accurate copy of the Fifth Note is attached as **Exhibit E** and incorporated by reference.

14. The First Note, the Second Note, the Third Note, the Fourth Note and the Fifth Note (collectively, the "Notes") all provide that IllumElex agrees to pay the unpaid principal amount due under the Notes, plus unpaid accrued interest, simultaneously with the closing of the sale of eighty-five (85%) or more of the issued and outstanding common stock of IllumElex to a third party who is not an affiliate of Carousel.

15. On or about November 16, 1998, pursuant to a Stock Purchase Agreement among Carousel, IllumElex and SLI (the "Stock Purchase Agreement"), Carousel sold its shares of IllumElex to SLI. The sale by Carousel of 85% or more of the stock of IllumElex triggered a mandatory prepayment of the Notes.

16. Upon information and belief, as part of the Stock Purchase Agreement, Carousel, IllumElex and SLI agreed that Carousel would assume IllumElex's obligations under the Notes, and Carousel, IllumElex and SLI entered into a valid and enforceable Assumption Agreement (the "Assumption Agreement"), whereby Carousel assumed and agreed to pay, perform and discharge all of the liabilities and obligations of IllumElex under the Notes for the benefit of the Investor Defendants.

17. Having assumed the Notes pursuant to the Stock Purchase Agreement and the Assumption Agreement with the intention to benefit the Investor Defendants, Carousel is obligated to the Investor Defendants under the Notes.

18. Carousel failed to pay the amounts outstanding under the Notes to the Investor Defendants simultaneously with the closing of the Stock Purchase Agreement as required in accordance with the terms of the Notes.

19. After demand by the Investor Defendants and presentment of the Notes For payment to Carousel, Carousel has refused to pay the Notes. Instead, Carousel has demanded that the Investor Defendants surrender the Notes for cancellation.

## FIRST CLAIM FOR RELIEF

20. The allegations of Paragraphs 1 through 19 of the Investor Defendants' Counterclaims are realleged and incorporated by reference.

21. Carousel has failed to pay the indebtedness due to LVF pursuant to the provisions of the First Note.

22. The First Note provides that LVF is entitled to the reimbursement of its costs for enforcement of the provisions of the First Note, including reasonable attorneys' fees.

23. The First Note provides that if the principal amount and the interest due under the First Note are not paid when due pursuant to the terms of the First Note, the outstanding principal amount and all unpaid accrued interest will bear interest at the rate of twelve percent (12%) per annum until paid in full.

24. As of December 4, 1998, Carousel is indebted to LVF under the terms of the First Note in the amount of Five Hundred Seventeen Thousand Eight and 04/100 Dollars ($517,008.04), plus all unpaid interest accrued through November 15, 1998, plus accrued interest from November 16, 1998 at the rate of twelve percent (12%) per annum.

25. In accordance with N.C. Gen. Stat. § 6-21.2, LVF hereby provides Carousel notice of LVF's intention to enforce the attorneys' fees provision in the First Note in the event that Carousel fails to pay the outstanding indebtedness due under the First Note within five (5) days of service of these Counterclaims.

**SECOND CLAIM FOR RELIEF**

26. The allegations of Paragraphs 1 through 25 of the Investor Defendants' Counterclaims are realleged and incorporated by reference.

27. Carousel has failed to pay the indebtedness due to LCF under the Second Note.

28. The Second Note provides that LCF is entitled to the reimbursement of its costs For enforcement of the provisions of the Second Note, including reasonable attorneys' fees.

29. The Second Note provides that if the principal amount and the interest due under the Second Note are not paid when due pursuant to the terms of the Second Note, the outstanding principal amount and all unpaid accrued interest will bear interest at the rate of twelve percent (12%) per annum until paid in full.

30. As of December 4, 1998, Carousel is indebted to LCF under the terms of the Second Note in the amount of Three Hundred Ten Thousand One Hundred Seventy-Seven and 83/100 Dollars ($310,177.83), plus all unpaid interest accrued through November 15, 1998, plus accrued interest from November 16, 1998 at the rate of twelve percent (12%) per annum.

31. In accordance with N.C. Gen. Stat. § 6-21.2, LCF hereby provides Carousel notice of LCF's intention to enforce the attorneys' fees provision in the Second Note in the event that Carousel fails to pay the outstanding indebtedness due under the Second Note within five (5) days of service of these Counterclaims.

## THIRD CLAIM FOR RELIEF

32. The allegations of Paragraphs 1 through 31 of the Investor Defendants' Counterclaims are realleged and incorporated by reference.

33. Carousel has failed to pay the indebtedness due to IP under the Third Note.

34. The Third Note provides that IP is entitled to the reimbursement of its costs for enforcement of the provisions of the Third Note, including reasonable attorneys' fees.

35. The Third Note provides that if the principal amount and the interest due under the Third Note are not paid when due pursuant to the terms of the Third Note, the outstanding principal amount and all unpaid accrued interest will bear interest at the rate of twelve percent (12%) per annum until paid in full.

36. As of December 4, 1998, Carousel is indebted to IP under the terms of the Third Note in the amount of One Hundred Eighty-Nine Thousand Four Hundred Ninety Seven and 02/100 Dollars ($189,497.02), plus all unpaid interest accrued through November 15, 1998, plus accrued interest from November 16, 1998 at the rate of twelve percent (12%) per annum.

37. In accordance with N.C. Gen. Stat. § 6-21.2, IP hereby provides Carousel notice of IP's intention to enforce the attorneys' fees provision in the Third Note in the event that Carousel fails to pay the outstanding indebtedness due under the Third Note within five (5) days of service of these Counterclaims.

## FOURTH CLAIM FOR RELIEF

38. The allegations of Paragraphs 1 through 37 of the Investor Defendants' Counterclaims are realleged and incorporated by reference.

39. Carousel has failed to pay the indebtedness due to IP II under the Fourth Note.

40. The Fourth Note provides that IP II is entitled to the reimbursement of its costs for enforcement of the provisions of the Fourth Note, including reasonable attorneys' fees.

41. The Fourth Note provides that if the principal amount and the interest due under the Fourth Note are not paid when due pursuant to the terms of the Fourth Note, the outstanding principal amount and all unpaid accrued interest will bear interest at the rate of twelve percent (12%) per annum until paid in full.

42. As of December 4, 1998, Carousel is indebted to IP II under the terms of the Fourth Note in the amount of One Hundred Thirty One Thousand Two Hundred Ninety-Nine and 42/100 Dollars ($131,299.42), plus all unpaid interest accrued through November 15, 1998, plus accrued interest from November 16, 1998 at the rate of twelve percent (12%) per annum.

43. In accordance with N.C. Gen. Stat. § 6-21.2, IP II hereby provides Carousel notice of IP II's intention to enforce the attorneys' fees provision in the Fourth Note in the event that Carousel fails to pay the outstanding indebtedness due under the Fourth Note within five (5) days of service of these Counterclaims.

## FIFTH CLAIM FOR RELIEF

44. The allegations of Paragraphs 1 through 43 of the Investor Defendants' Counterclaims are realleged and incorporated by reference.

45. Carousel has failed to pay the indebtedness due to Southern under the Fifth Note.

46. The Fifth Note provides that Southern is entitled to the reimbursement of its costs for enforcement of the provisions of the Fifth Note, including reasonable attorneys' fees.

47. The Fifth Note provides that if the principal amount and the interest due under the Fifth Note are not paid when due pursuant to the terms of the Fifth Note, the outstanding principal amount and all unpaid accrued interest will bear interest at the rate of twelve percent (12%) per annum until paid in full.

48. As of December 4, 1998, Carousel is indebted to Southern under the terms of the Fifth Note in the amount of One Hundred Eighty-Nine Thousand Four Hundred Seventy One and 43/100 Dollars ($189,471.43), plus all unpaid interest accrued through November 15, 1998, plus accrued interest from November 16, 1998 at the rate of twelve percent (12%) per annum.

49. In accordance with N.C. Gen. Stat. § 6-21.2, Southern hereby provides Carousel notice of Southern's intention to enforce the attorneys' fees provision in the Fifth Note in the event that Carousel fails to pay the outstanding indebtedness due under the Fifth Note within five (5) days of service of these Counterclaims.

WHEREFORE, the Defendants respectfully pray the Court that:

1. Carousel have and recover nothing against the Defendants on its Complaint;

2. Carousel's Complaint be dismissed with prejudice;

3. LVF have and recover from Carousel the sum of Five Hundred Seventeen Thousand Eight and 04/100 Dollars ($517,008.04), plus all unpaid interest accrued through

November 15, 1998, plus accrued interest from November 16, 1998 at the rate of twelve percent (12%) per annum pursuant to the terms of the First Note;

4. LCF have and recover from Carousel the sum of Three Hundred Ten Thousand One Hundred Seventy-Seven and 83/100 Dollars ($310,177.83), plus all unpaid interest accrued through November 15, 1998, plus accrued interest from November 16, 1998 at the rate of twelve percent (12%) per annum pursuant to the terms of the Second Note;

5. IP have and recover from Carousel the sum of One Hundred Eighty-Nine Thousand Four Hundred Ninety-Seven and 02/100 Dollars ($189,497.02), plus all unpaid interest accrued through November 15, 1998, plus accrued interest from November 16, 1998 at the rate of twelve percent (12%) per annum pursuant to the terms of the Third Note;

6. IP II have and recover from Carousel the sum of One Hundred Thirty One Thousand Two Hundred Ninety-Nine and 42/100 Dollars ($131,299.42), plus all unpaid interest accrued through November 15, 1998, plus accrued interest from November 16, 1998 at the rate of twelve percent (12%) per annum pursuant to the terms of the Fourth Note;

7. Southern have and recover from Carousel the sum of One Hundred Eighty-Nine Thousand Four Hundred Seventy-One and 43/100 Dollars ($189,471.43), plus all unpaid interest accrued through November 15, 1998, plus accrued interest from November 16, 1998 at the rate of twelve percent (12%) per annum pursuant to the terms of the Fifth Note;

8. The Defendants have and recover their attorneys' fees from Carousel in accordance with the provisions of the Notes, the bylaws of IllumElex and/or N.C. Gen. Stat. § 6-21.2;

9. The Defendants have and recover their costs in this matter; and

10. The Defendants have and recover such additional relief as they may be entitled to under the facts and the applicable law.

This the 22 day of October, 1999.

Peter J. Covington/CRB

Peter J. Covington
N.C. State Bar No. 9175

John H. Cobb
N.C. State Bar No. 17052

Craig R. Baldauf
N.C. State Bar No. 23760

SMITH HELMS MULLISS & MOORE, L.L.P.
201 North Tryon Street
P.O. Box 31247
Charlotte, North Carolina 28231-1247
Telephone: (704) 343-2000
Facsimile: (704) 334-8467

Attorneys For Loyalhanna Venture Fund, L.P., Loyalhanna Commonwealth Fund, L.P., Intersouth Partners, L.P., Intersouth Partners II, L.P., The Southern Venture Fund Limited Partnership, Dennis J. Dougherty, William F. Earthman III, and James H. Knowles, Jr.

## CERTIFICATE OF SERVICE

This is to certify that the undersigned attorney has served a copy of the foregoing **ANSWER AND COUNTERCLAIMS** by depositing a copy of same in a postpaid envelope in a post office or official depository under the exclusive care and custody of the United States Post Office, properly addressed as follows:

Kiran H. Mehta
Kennedy Covington Lobdell & Hickman, L.L.P.
NationsBank Corporate Center, Suite 4200
100 North Tryon Street
Charlotte, North Carolina 28202-4006

William Woodward Webb
Broughton Wilkins Webb & Sugg, P.A.
P. O. Box 2387
Raleigh, North Carolina 27602

Michael Crane
Assistant General Counsel
Ernst & Young, L.L.P.
787 Seventh Avenue
New York, New York 10019

Robert W. Spearman
Parker Poe Adams & Bernstein, L.L.P.
150 Fayetteville Street Mall, Suite 1400
Raleigh, North Carolina 27602-0389

This the 22nd day of October, 1999.

Peter J. Covington /CAB

Peter J. Covington

**PARTIALLY SCANNED DOCUMENT**

THIS IS A PARTIALLY SCANNED DOCUMENT. PLEASE SEE THE CASE FILE FOR ANY ATTACHMENTS OR OTHER MATERIALS WHICH HAVE NOT BEEN SCANNED.

**PARTIALLY SCANNED DOCUMENT**